UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA S. M.,<br><br>                  Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Case No. 3:22-CV-5018-LK<br><br>ORDER REVERSING AND REMANDING THE COMMISSIONER'S FINAL DECISION |

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends that the ALJ erred by failing to find her thoracic outlet syndrome to be a severe impairment at step two of the sequential evaluation process, improperly rejecting medical evidence, and improperly rejecting her symptom testimony. Dkt. No. 15 at 1–2. As a result of these errors, Plaintiff requests that this Court remand her case for an award of benefits, or in the alternative, a *de novo* hearing. *Id.* at 12–13. The Commissioner concedes that the ALJ's decision contained legal errors but contends that remanding for further proceedings is the appropriate remedy due to evidentiary conflicts concerning the timing of Plaintiff's impairments and limitations. *See* Dkt. No. 22 at 2–3. The Court reverses the Commissioner's final decision and remands the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER REVERSING AND REMANDING THE COMMISSIONER'S FINAL DECISION - 1

## I. BACKGROUND

This is the second time this case is before the Court. On December 1, 2016, Plaintiff applied for benefits, alleging disability as of September 1, 2010. Dkt. No. 13 at 35, 140, 300. Plaintiff's applications were denied initially and on reconsideration. *Id.* at 156, 175, 197, 217. On October 23, 2018, ALJ Allen Erickson conducted a hearing, where Plaintiff amended her alleged onset date of disability to June 17, 2015. *Id.* at 1229, 1232–36. ALJ Erickson then issued decision finding Plaintiff not disabled. *Id.* at 18–40.

On September 2, 2020, this Court issued a decision reversing ALJ Erickson's decision and remanding the matter for further proceedings. *Id.* at 1210–21. On remand, ALJ C. Howard Prinsloo held a hearing and issued a decision finding Plaintiff not disabled. *Id.* at 1111–74. Plaintiff then sought review of ALJ Prinsloo's decision in this Court.

## II. DISCUSSION

### A. Legal Standard

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id.* at 1046 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited

evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credit[s the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

## B. The Parties Do Not Dispute The ALJ's Errors

Plaintiff avers that the ALJ erred in (1) finding Plaintiff's thoracic outlet syndrome to be a non-severe impairment; (2) failing to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony; (3) rejecting the opinion of Dr. Ellen Kim, M.D.; (4) rejecting the opinion of Bernard Bansil, DPT, and Brock Giannaris, DPT; (5) rejecting the opinion of Dr. David Widlan, PhD.; and (6) rejecting the opinion of Dr. Brook Star, M.D. Dkt. No. 15 at 2–12. In response, the Commissioner "agrees that the ALJ's decision contains legal errors," and avers that the only disputed issue is whether the Court should "remand this case for further proceedings, instead of reversing for a finding of disability and payment of benefits[.]" Dkt. No. 22 at 1–2. Given the Commissioner's concession and failure to defend against Plaintiff's allegations of error, the Court finds that step one is satisfied. *See Mariah C. v. Kijakazi*, No. 6:22-CV-614-SI, 2023 WL 5827681, at *3 (D. Or. Sept. 8, 2023) ("The Commissioner's failure to defend the ALJ's reasoning or respond to Plaintiff's arguments challenging these reasons is a waiver of any argument that the ALJ did not err in these analyses.").

## C. There Are Outstanding Issues That Must Be Resolved Before A Determination Of Disability Can Be Made

The Commissioner argues that Plaintiff's record contains evidentiary conflicts that warrant remand for further proceedings, specifically regarding Plaintiff's amended alleged onset date of disability and the medical opinion evidence. *See* Dkt. No. 22 at 3–5. Therefore, the dispositive

ORDER REVERSING AND REMANDING THE COMMISSIONER'S FINAL DECISION - 3

inquiry in this appeal is whether there are outstanding issues that must be resolved before a determination of disability can be made.

      1.      <u>Plaintiff's Alleged Onset Date of Disability</u>

The Commissioner first argues that evidentiary conflicts regarding the timing of Plaintiff's impairments and limitations require a remand for further proceedings. *Id.* at 3–4. Specifically, the Commissioner argues that there is conflicting evidence regarding Plaintiff's contention that her disability began on June 17, 2015, including several medical opinions, "[p]hysical examinations in 2015, 2016, and 2017[ that] showed mostly unremarkable findings," and evidence that Plaintiff "was able to cook, clean, take [her son] to school and activities, teach him, read to him, and help him with his special needs" in 2015 when he was four years old. *Id.* at 3–4. The Commissioner also points out that while Plaintiff "relies heavily" on limitations stemming from her thoracic outlet syndrome, she was not tested for the condition until 2018. *Id.* at 3. Plaintiff concedes that her thoracic outlet syndrome is "indeed . . . noted in the record from 2018 onwards," but asserts that her "other limitations" date back to June 17, 2015, as supported by the examination results of Dr. Leslie Morey, the opinion of Dr. Widlan, and the opinion of Dr. Brook Star. Dkt. No. 23 at 2.

"[T]he onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months." *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). Where, as here, the cause of plaintiff's disability is not traumatic, the determination of the onset of disability involves assessing the claimant's allegation, work history, and medical and other evidence concerning the claimant's impairments. *See* SSR 83-20, 1983 WL 31249, at *1. The "date alleged by the individual should be used if it is consistent with all the evidence available" and the establishment of the onset date "must be fixed based on

the facts and can never be inconsistent with the medical evidence of record." *Id*. at *3.

Plaintiff amended her alleged onset date to June 2015 during her first hearing with ALJ Erickson based on the evaluations of Dr. Kathleen Andersen and Dr. Leslie C. Morey. *See* Dkt. No. 13 at 1141, 1232–36. In 2017, Dr. Andersen diagnosed Plaintiff with adjustment disorder with anxiety and assessed that Plaintiff "certainly would appear to have marked difficulty with organization, time management, concentration, [and] organizing tasks." *Id.* at 950. Dr. Andersen also noted that it was "very difficult to assess [Plaintiff's] ability to function because of the vagaries of her presentation" and suggested that Plaintiff undergo a neuropsychological test with personality testing to "help delineate the presence or absence of a Thought Disorder, whether symptoms were being exaggerated, minimized, etc." *Id.* Unbeknownst to Dr. Andersen, Plaintiff had undergone a personality assessment with Dr. Morey in June 2015. *Id.* at 879–81. The assessment indicated possible diagnoses of major depressive disorder, single episode, unspecified; posttraumatic stress disorder; and somatization disorder. *Id.* at 887. According to Plaintiff, Dr. Morey's findings from the personality assessment essentially support Dr. Andersen's findings, and thus form the basis of her amended onset date. *See* Dkt. No. 23 at 2. The Court is not convinced.

First, Dr. Morey's report made it clear that her findings were being "advanced as hypotheses" and that "all available sources of information should be considered prior to establishing final diagnoses." Dkt. No. 13 at 887. Further, as the Commissioner points out, Plaintiff's medical record also includes other assessments that do not necessarily show Plaintiff's disability started in June 2015. For example, in June 2015, Dr. Jenna Yun completed an evaluation and diagnosed Plaintiff with adjustment disorder, with mixed anxiety and depressed mood. *Id.* at 869–71. But Dr. Yun also opined that based on Plaintiff's mental impairments, Plaintiff would be moderately limited in performing basic work activities. *Id.* at 870–71.

Plaintiff also argues that other medical opinions, including those of Dr. David Widlan, support her alleged onset date of June 2015. *See* Dkt. No. 23 at 2–3; *see also* Dkt. No. 15 at 11. But even these opinions are unclear about Plaintiff's onset date. For example, in September 2021, Dr. Widlan completed a medical source statement by conducting a mental status examination and reviewing Plaintiff's records, the oldest record being Dr. Morey's assessment. Dkt. No. 13 at 1789. Dr. Widlan opined that Plaintiff suffers from posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, and unspecified neurocognitive disorder, and that these limitations became severe in June 2015, presumably because of Dr. Morey's assessment. *See id.* at 1788, 1790. In contrast, and as mentioned above, in June 2015 Dr. Yun opined that Plaintiff would be moderately limited in performing basic work activities. *Id.* at 870–71. And in a September 2016 opinion, Dr. David Mashburn reached the same conclusion as Dr. Yun. *Id.* at 893–94. While Plaintiff argues that these opinions are directly contradicted by Dr. Widlan's opinion, Dkt. No. 23 at 2, the ALJ's error in rejecting Dr. Widlan's opinion does not resolve the conflict, particularly given Dr. Widlan's reliance on Dr. Morey's findings, Dkt. No. 13 at 1789–90 (relying on June 17, 2015 Personality Assessment Inventory).

The Court notes that the Commissioner's other arguments are not persuasive. The Court already concluded that the ALJ erred by discounting Plaintiff's physical testimony:

> Plaintiff testified she taught her son to do many things, such as prepare food for himself, including using the oven with monitoring or using the microwave, so his basic needs can be met when she has a "bad day." Tr. 88-89. Her son is in school all year and his school bus provides "door-to-door" pickup, so Plaintiff does not need to bring him to school or even to a bus stop. Tr. 85, 100. The ALJ also cited doing household chores such as laundry, but Plaintiff testified it causes a fibromyalgia flare-up, necessitating lying down for about a day. Tr. 112. Conflict with activities was not a clear and convincing reason to discount Plaintiff's testimony.

Dkt. No. 13 at 1217–18. The argument that Plaintiff did not have work preclusive limitations

because she performed activities to care for her son ignores important details regarding her limitations in providing such care.

Nevertheless, given that the medical opinions in Plaintiff's record vary as to when Plaintiff's impairments first began to affect her ability to engage in substantial gainful activity, the Court cannot say that the date as amended by Plaintiff "is consistent with all the evidence available." *See* SSR 83-20, 1983 WL 31249, at *3. Accordingly, the Court finds remand is necessary for further consideration of Plaintiff's alleged onset date of disability.

2.  Medical Opinions

The Commissioner also argues that remand for further proceedings is necessary because of the conflicting medical opinion evidence in Plaintiff's record. *See* Dkt. No. 22 at 5. The Court agrees.

The medical opinions in Plaintiff's record differ as to the severity of Plaintiff's mental and physical impairments. For example, in May 2017, Dr. Rita Flanagan found Plaintiff either not significantly limited or moderately limited with respect to her mental residual functional capacity. *See* Dkt. No. 13 at 153–54, 172–74. Dr. Flanagan's opinion is similar to Dr. Yun's and Dr. Mashburn's opinions, which contradict Dr. Andersen's and Dr. Widlan's opinions that Plaintiff is markedly limited. *Compare id.* at 868–72 (Dr. Yun), 891–95 (Dr. Mashburn), *with id.* at 950 (Dr. Andersen), 1784–94 (Dr. Widlan). Furthermore, both Mr. Bansil and Mr. Giannaris, who have provided physical therapy to Plaintiff since June 2017, opined that even if Plaintiff attempts sedentary work on full time basis, her pain due to fibromyalgia would result in an absenteeism of three or more days on a monthly basis. *See id.* at 1109–10. Dr. Brook Starr also opined that Plaintiff's fibromyalgia and thoracic outlet syndrome would limit her ability to perform work activities during an eight-hour workday. *See id.* at 1796. In contrast, Dr. Platter opined that Plaintiff

has little or no exertional, postural, or manipulative limitations. *See id.* at 191–93, 211–13. Notably, Dr. Platter found that Plaintiff is able to stand/and or walk for six hours in an eight-hour workday, can sit for six hours in an eight-hour workday, and has no limitations with respect to pushing and/or pulling other than occasionally lifting/carrying 20 pounds or more or frequently lifting/carrying 10 pounds or more. *Id.* at 192, 212. Dr. Flanagan and another state agency psychological consultant, Edward Beaty, Ph.D., similarly found that Plaintiff "retains the capacity to . . . complete a normal workday/workweek within normal tolerances of a competitive workplace." *Id.* at 154, 173, 214.

Given the differing medical opinions regarding the severity of Plaintiff's mental and physical limitations, the Court cannot conclude that further administrative proceedings would serve no useful purpose, nor can it conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Accordingly, the Court finds that it is appropriate to remand this matter for further proceedings.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

//

//

//

//

//

//

On remand, the ALJ should determine Plaintiff's alleged onset date of disability, reassess the medical opinions, reconsider Plaintiff's allegations and any other part of the decision as necessary, further develop the record, redetermine residual functional capacity as needed, address the remaining steps of the five-step disability evaluation process, offer Plaintiff the opportunity for another hearing, and issue a new decision.

DATED this 22nd day of September, 2023.

Lauren King
United States District Judge